616 So.2d 506 (1993)
Arturo DOMINGUEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 92-414.
District Court of Appeal of Florida, Third District.
March 16, 1993.
Bennett H. Brummer, Public Defender, and Rosa C. Figarola, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard L. Polin, Asst. Atty. Gen., and Teresa D. Sands, Certified Legal Intern, for appellee.
Before SCHWARTZ, C.J., and COPE and GERSTEN, JJ.

ON MOTION FOR REHEARING
COPE, Judge.
We grant the motion for rehearing in part, withdraw the opinion filed December 1, 1992, and substitute the following opinion:
Arturo Dominguez appeals his conviction and sentence for trafficking in cocaine. Dominguez entered a plea of no contest, reserving his right to appeal denial of his motion to suppress evidence. We reverse.
Police officers sought Dominguez' consent to search his apartment. They told Dominguez they were conducting a narcotics investigation and believed that narcotics had been dispensed from his apartment. The officers stated that "the quickest way to resolve the whole matter was if [the officers] could search the premises and determine if there were no narcotics in the apartment... ." Although Dominguez contends that his consent was involuntary, the trial court found otherwise and there is substantial competent evidence to support that finding. See State v. Gribeiro, 513 So.2d 1323, 1324 (Fla. 3d DCA 1987).
We conclude, however, that the search actually conducted exceeded the scope of the consent given. "When the police are relying upon consent to conduct a warrantless search, they have no more authority than that reasonably conferred by the terms of the consent." State v. Wells, 539 So.2d 464, 467 (Fla. 1989), aff'd on other grounds, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990).
In the present case several officers were in Dominguez' apartment at the time he gave consent to search for narcotics. Under the circumstances, that consent could reasonably be construed to allow the officers to search within the apartment in places in which narcotics might be found. See 3 Wayne R. LaFave, Search & Seizure § 8.1(c), at 165 (2d ed. 1987).
After the consent was given, however, the officers requested that a narcotics detection dog be sent to the apartment. About fifteen minutes later, an officer arrived *507 with a narcotics detection dog. The dog was taken through the apartment and alerted to a sink. The sink was taken apart and the officers broke into the wall behind the sink.[1]
We conclude that the officers exceeded the scope of the consent by bringing the narcotics detection dog on the premises. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of `objective' reasonableness  what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. ___, ___, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297, 302 (1991) (citation omitted).
The present search was the search of a home. "A private home, as here, is an area where a person enjoys the highest reasonable expectation of privacy under the Fourth Amendment ... and ... accordingly, the factors bearing on the voluntariness of a consent to search a home must be scrutinized with special care." Gonzalez v. State, 578 So.2d 729, 734 (Fla. 3d DCA 1991) (citation omitted). Here, the standard of objective reasonableness was not met. The defendant consented to an entry and search by the officers. However, the officers were not accompanied by the drug detection dog when they obtained consent. The officers did not make a specific request for consent to use use of a drug detection dog. In our view, the consent given to the officers did not by implication include the subsequent entry by the dog and its handler. In the absence of an express consent or circumstances from which consent to the use of the drug detection dog could be reasonably implied, the officers exceeded the scope of the consent given.
The cases relied on by the state are inapposite. In United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Court held that a canine sniff of luggage is permissible during a Terry[2] stop. That is not the issue here. In United States v. Gonzalez-Basulto, 898 F.2d 1011 (5th Cir.1990) the defendant's consent to a search of his truck at a Border Patrol checkpoint included consent to a dog sniff because drug detection dogs were being openly used and were visible to defendant when he gave consent. In United States v. Richards, 500 F.2d 1025 (9th Cir.1974), cert. denied, 420 U.S. 924, 95 S.Ct. 1118, 43 L.Ed.2d 393 (1975), defendant consented to a search of his belongings on an airplane he piloted. Although the opinion reports that a drug detection dog was used, defendant did not challenge use of the drug detection dog.
The motion to suppress the evidence seized as a result of the search should have been granted. The conviction and sentence must be reversed. Because this point is dispositive, we need not analyze defendant's alternative argument for reversal.
Reversed and remanded.
NOTES
[1] The trial court stated that the narcotics were "in an area that had to be torn apart, for want of a better word... ."
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).